UNITED STATES *v.* KOONS, WILSON & Co. (No. 2976) [1]

United States Court of Customs Appeals, December 5, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 6, 1927, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Justices

HATFIELD, Judge, delivered the opinion of the court:

Urn-shaped lamp bases composed of highly polished black glass were assessed for duty by the collector at the port of Philadelphia at 60 per centum ad valorem as illuminating articles for use in connection with artificial illumination under paragraph 218 of the Tariff Act of 1922. The provision reads as follows:

PAR. 218. * * * illuminating articles of every description, including chimneys, globes, shades, and prisms, for use in connection with artificial illumination, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 60 per centum ad valorem; * * *

The importer contended, and the court below held, that the articles were dutiable at 55 per centum ad valorem under another provision of paragraph 218, which reads as follows:

PAR. 218. * * * table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly

[1] T. D. 42512.

blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem; * * *

The Government has appealed from the judgment sustaining the protest.

On the trial below the importer called as a witness J. H. Goodwin, who testified that he was an examiner of merchandise at the office of the appraiser at the port of Philadelphia; and that he was familiar with the articles in question, having officially examined and advisorily classified them as illuminating articles for use in connection with artificial illumination, prior to their classification as such by the collector. He described the articles as follows:

A. Exhibit 1 is made of black glass, about 12 to 16 inches high, and it has a hole throughout, there is no bottom, and from that fact I take it that it is to be put on a base wherever they want it; they left a hole for a wire to pass through, to make an electric lamp.

Q. It is used as a base for a lamp with a metal top to be attached to it?—A. Why, there are attachments to be put on whereby making it into a lamp.

Q. How about the Exhibit 2, is that also a lamp base to have a metal top attached?—A. Exhibit 2 instead of being hollow throughout, has a hole drilled in the side through which the wire is passed in order to make it into a lamp.

Q. Am I correct in my understanding on the small end of Exhibit 2 there is fitted a metal part to make a lamp?—A. It is unserviceable in its present shape.

Q. The whole part of the lamp is to be attached to this?—A. It has to be to make it into a lamp. * * * Glass candlesticks of course are complete articles suitable for the use as candlesticks. This article is to form the main part of a glass electric lamp. Of course it is not complete yet.

Q. I observe that in this article marked Exhibit 2, there is a hole in the bottom or base.—A. Yes, sir.

Q. For what purpose is that?—A. Presumably to put an electric wire through.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

With reference to the use of the imported articles he said:

Q. Have you ever observed personally any use of articles like the Exhibits 1 and 2, other than as a mere base for lamps? Yes or no.—A. I can not answer it, yes or no.

Q. Go ahead, answer it the way you want.—A. I have seen completed lamps with a base similar to this.

Q. And as completed did the base, like the Exhibits 1 and 2, have *anything to do directly or indirectly with the artificial illumination, with the reflection or refraction of the light?*—A. *Except as a decoration supporting the upper part of the lamp.*

Q. Except supporting the upper part of the lamp from which the *illumination occurred?*—A. *Yes.*

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Q. Whereas to construct a lamp out of the Exhibits 1 and 2, rather, whereas in constructing a lamp out of Exhibits 1 and 2, *it would not be only decorative in* your *opinion,* but *it will serve as the main body of* the *lamp?*—A. It *would have no other purposes than completing* the *lamp.*

Q. Then the base itself can not be used for any other purpose than for an illuminating lamp so far as you know?—A. As constructed, it must have been designed for that purpose.

Q. You do not know of any other use for it?—A. No.

Q. And when the article is completed with other additional parts, whatever they may be, *then that lamp is used for illuminating purposes?*—A. Yes.

Q. And that lamp is not only used for decorating purposes, but it actually goes to light the room?—A. That is its prime purpose, giving light.   (Italics not quoted.)

There is no other evidence upon which a decision may be based.

Upon this record the court below held that, as the articles were not used in connection with artificial illumination in such manner as to affect the light for illuminating purposes, they were not dutiable as illuminating articles.

It is claimed by counsel for the Government that, as the articles in question are exclusively used as bases for electric lamps, and, as they are composed of polished black glass, they reflect, refract, and disperse the light for purposes of artificial illumination, and are therefore dutiable as illuminating articles within the decisions of this court in *United States* v. *Bloch & Co.*, 13 Ct. Cust. Appls. 5, T. D. 40847; *Solomon & Son* v. *United States*, 13 Id. 353, T. D. 41256; and *United States* v. *Wyle & Bros.*, 14 Id. 297, T. D. 41910.

In the *Bloch* case the court had before it decorated and colored blown-glass candlesticks, chiefly used for decorative purposes, and seldom, if ever, used to hold lighted candles.  In disposing of the case the court said:

We find ourselves unable to agree with this contention and are of opinion that to bring an article within subdivision (a) it must, at least, appear that it is commonly and chiefly used in connection with artificial illumination.   Whether, if chiefly used in producing a decorative illumination, an article might not be within the subdivision (a), we do not wish to determine on this record, and although we incline to the view expressed by the board that a glass candlestick used to hold a candle intended for practical lighting purposes would not be an illuminating article within subdivision (a), we also reserve decision on that question.

In the *Solomon* case, the court had before it certain so-called "glass stones," chiefly used on automobile lamps and so located as to cause the rays of light emanating from an electric light bulb to pass through them.   In this case we held that, in order to come within the provisions in question, an article must be chiefly used in connection with artificial illumination; not in the generation of light, but "in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes."

In the *Wyle* case, the court considered certain glass "bobeches," "leaves," and "bunches of grapes."   The court said:

We think this case is decided by the case of *Solomon* v. *United States*, 13 Ct. Cust. Appls. 353, T. D. 41256.  * * *  In the case at bar, we think all of the exhibits are used in connection with artificial illumination, and that they do affect the light; to what extent or with what effect, is immaterial.

The articles before us are highly polished black glass bases for electric lamps. When in use they are parts of such lamps. But there is no evidence as to how the lamps, of which these articles are the bases, are constructed. There is no evidence that the bases are in such relation to the light emanating from the finished electric lamps that they refract, reflect, disperse, or otherwise affect it for illuminating purposes. The evidence is to the contrary. The Government examiner, who examined the articles at the port of Philadelphia and advisorily classified them as "illuminating articles," said:

A. I have seen completed lamps with a base similar to this.

Q. And as completed did the base, like the Exhibits 1 and 2, have anything to do directly or indirectly with the artificial illumination, with the reflection or refraction of the light?—A. Except as a decoration supporting the upper part of the lamp.

Q. Except supporting the upper part of the lamp from which the illumination occurred?—A. Yes.

This testimony was submitted by the importer to meet the presumption of correctness attending the collector's classification of the merchandise as "illuminating articles." We think it is sufficient to meet and overcome that presumption.

The Government offered no evidence upon the subject.

Upon this record the court below found as a fact that the articles when in use as bases for electric lamps do not affect the light for illuminating purposes.

We are asked by the Government to hold that this finding of fact is not supported by the evidence and is contrary to its weight. We are unable to do that. We think the finding and judgment of the court is in conformity with the evidence in the case. It may be that lamps are, or may be, so constructed as to make these glass bases illuminating articles. But there is nothing in the record to support this conjecture.

The judgment is *affirmed*.