UNITED STATES *v.* GENERAL DISPLAY CASE CO., INC. (No. 3708)[1]

[1] T. D. 46976.

United States Court of Customs and Patent Appeals, February 26, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument December 15, 1933, by Mr. Folks and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Merchandise, described in the two entries as "illuminating glassware", and in the accompanying invoices as "Hudnut—displays—hollow glass units of cylindrical shape of ord. opalized glass with colored decalcomania", was imported at the port of New York. It was classified by the collector, in each instance, as "globes or shades, composed in chief value of glass, for use in connection with artificial illumination", at 70 per centum ad valorem under subparagraph (c) of paragraph 218, Tariff Act of 1930, which, so far as material, is as follows:

PAR. 218. * * * (c) Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination: Prisms, glass chandeliers, and articles in chief value of prisms, 60 per centum ad valorem; chimneys, 55 per centum ad valorem; globes and shades, 70 per centum ad valorem; all others, 60 per centum ad valorem: * * *

The importer protested in each instance, claiming the goods to be dutiable, alternatively, at 60 per centum ad valorem under said subparagraph (c), or as plated or cased glass glassware under subparagraph (d), or as articles in chief value of glass under subparagraph (f), or at 50 per centum ad valorem as table and kitchen articles and utensils, in chief value of glass, under subparagraph (g), of said paragraph. Claims were also made as manufactures of glass under paragraph 230, as not enumerated manufactured and unmanufactured articles under paragraph 1558, and under the similitude paragraph, 1559.

The United States Customs Court, on appeal, sustained the protests under said subparagraph 218 (d), and overruled them in all other respects. The Government has appealed. The issue here is, therefore, whether the goods are properly classifiable under said subparagraph (c) or (d) of said paragraph 218. Said subparagraph (d) is as follows:

(d) All glassware commercially known as plated or cased glass, composed of two or more layers of clear, opaque, colored, or semitranslucent glass, or combinations of the same, 60 per centum ad valorem.

A sample of goods identical in every respect, except as to the kind of glass, was introduced in evidence. It was stipulated by counsel, during the trial, that the imported merchandise was made of cased glass. The sample shows that the imported articles were exact reproductions in shape, form, and color, except as to size, of the DuBarry beauty preparation packages. Each article is in the form of a cylinder, closed at the top, each being about 12 inches in height and 8 inches in diameter. On each side of the cylinder appear the words "DuBarry Beauty Preparations, Richard D. Hudnut", with a representation of a marble bust, presumably of Madame DuBarry, on a rectangular red background. The glass is white and translucent. The inscription is in black. It is said that this reproduction is in the color scheme of the DuBarry packages, namely, milky white, gray, and red.

The bottom of the cylinder is so constructed that it will stand upright upon a counter or other plane surface, and the article is fitted with a small rectangular hole on the bottom edge for the reception of an electric-light wire, by means of which a base holding an electric-light lamp can be inserted into the bottom of the article. These cords and lighting fixtures are not imported with the article, but are furnished by the importer after the goods are imported.

The testimony shows that the articles are used for advertising purposes, and are placed in shops and stores where the Hudnut preparations are for sale. Sometimes they are placed on a counter, sometimes in windows, and elsewhere about the establishment where they can be seen. When there is a light inside the article, the advertisements upon its sides are plainly visible, the whole article reflecting a mild and pleasing light. In addition to the display of the advertisements, there is some, although merely incidental, illumination of the surroundings occasioned by the light shining through the glass.

The evidence also shows that at times, especially in the daytime, no light is used, the advertisements being visible without the use of such light. Usually a light is used at night. It is also shown that at times these articles are fitted with a flashing light, by which the article is alternatively lighted and darkened.

The testimony fairly shows, we believe, that the chief use of the articles, if not the only use, is for advertising purposes. It is not

denied that there is also an incidental illumination. Testimony was produced by the Government, attempting to show that similar glass articles, without advertisements, were sold in the trade, and were known, commercially, as globes, and that these were used in connection with artificial illumination of buildings and the like.

These are all the essential facts. In view of them, should the articles be classified for dutiable purposes as illuminating articles for use in connection with artificial illumination, and particularly as globes? There is no contention on the part of anyone that they are shades.

We have been called upon, on several occasions, to construe the predecessor paragraph of 218 (d); that is, paragraph 218 of the Tariff Act of 1922. It is manifest that the classification of so-called "illuminating articles" under that act has been established by the use to which the article was put.

In *United States* v. *Bloch & Co.*, 13 Ct. Cust. Appls. 5, T.D. 40847, we discussed the classification of certain glass candlesticks which had been classified as illuminating articles for use in connection with artificial illumination. We did not agree to the correctness of this classification, stating that, although the candlesticks were sometimes used to hold lighted candles for decorative or ornamental illuminating purposes, "they are seldom, if ever, used for the purpose of holding candles that are employed to furnish light for useful or practical purposes." Finding that to be true, we found these articles were not properly classified by the collector.

In *Solomon & Son* v. *United States*, 13 Ct. Cust. Appls. 353, T.D. 41256, certain small, colored, faceted glass articles were classified as articles composed of cut or colored glass or paste, under paragraph 218 of the Tariff Act of 1922. The Board of General Appraisers, now the United States Customs Court, held that the articles were illuminating articles within the provisions for such articles contained in said paragraph 218, and, inasmuch as the importer had not claimed under this provision, sustained the collector's classification without approving its correctness. The articles were used in automobile lamps and so located that the rays from an electric-light lamp would pass through them. We said:

* * * We do not believe that the character, degree, or extent of illumination furnished by an article is a proper test under the statute, if it is chiefly used in connection with artificial illumination and in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.

* * * * * * *

* * * The provision in paragraph 218, *supra*, for illuminating articles of every description is specially limited to such articles as are for use in connection with artificial illumination. Accordingly, articles not chiefly used in connection

with artificial illumination, would not come within the provision for "illuminating articles", although otherwise coming within its terms.

In *United States* v. *Wyle & Bros.*, 14 Ct. Cust. Appls. 297, T.D. 41910, certain glass bobeches, leaves, and other ornaments used in connection with chandeliers were before us. While these articles, in themselves, did not emit light except by reflection, they were used in connection with artificial illumination, and did affect light, and this court held them to be properly classified as illuminating articles under said paragraph 218.

In *United States* v. *Koons, Wilson·& Co.*, 15 Ct. Cust. Appls. 352, T.D. 42512, certain highly polished black glass lamp bases were imported, and were classified under said paragraph 218 as illuminating articles. We held that there was no evidence as to how the lamps to be used with these bases were constructed, or that the relation of the base to the light was such that the bases would affect the light for illuminating purposes. Therefore, we were of opinion that they were not illuminating articles.

These cases emphasize the thought that the provision for illuminating articles to be used in connection with artificial illumination includes only such articles as are chiefly used in connection with artificial illumination for illuminating purposes. If they are chiefly used for some other purpose, and were constructed for that purpose, and if the illumination provided by them is minor and incidental, only, to their chief use, and are not intended for or used for the purpose of illuminating the surrounding atmosphere, then they should not be classified as illuminating articles, under said paragraph 218 (c). Judge Sullivan, in the decision of the court below, succinctly expresses it thus:

What is the ordinary meaning of artificial illumination? Unquestionably it means the diffusion of light by artificial means throughout an area, such as a room, a building, or part of a road or street, for the specific purpose of lighting such area.

Counsel for the Government insists that the imported goods were properly classified, basing this contention upon the fact that the goods were entered by the importer as "illuminating glassware." He contends that this is an admission by the importer against interest which should be taken, it being also claimed that this presumption has not been overcome by anything shown in the record. On this point, he cites *United States* v. *Rockhill & Victor*, 10 Ct. Cust. Appls. 112, T.D. 38374. The trial court has properly observed that any such presumption arising from said entry is eliminated by the language of the invoice description which has been hereinbefore quoted. However, we are of opinion that the case may not be decided upon such a presumption, as the evidence appearing in the record is amply suffi-

cient to justify a conclusion of fact that the imported articles are not illuminating articles, as classified.

We find no error in the judgment appealed from, and, therefore, it is *affirmed*.

### DISSENTING OPINION

GARRETT, Judge: The merchandise here involved consists of articles generally referred to in the record as "globes." It is noted that they were described by the appraiser as "globes or shades", and an examination of the sample on file indicates that they may be most accurately described as shades. The name, however, I do not regard as being particularly material, because there is no dispute as to the manner in which the merchandise is actually used or the purpose it really serves. It is designed specifically to be fitted over an artificial lighting element such as an electric bulb. When so placed it modifies or softens the light, and the light shining through the letters and designs brings them into prominent view in a manner which will attract the attention of observers and advertise the goods which it is desired to bring to public notice. I can discern no material difference in the inherent nature of the imported articles and that of ordinary opaque glass shades such as are in daily use in connection with lighting devices in the home and elsewhere, except that the imported articles have advertising matter upon them.

It is true that for the advertising ends sought, it is not necessary to use a strong lighting element within the globe or shade and hence the illuminated space in the room where they are placed is ordinarily restricted, but this is a mere matter of choice with the user. There is nothing to prevent the use of larger and more brilliant light bulbs if one wishes to use such.

It is also true, according to testimony in the record, that in the day time it is not customary to have the lights burning since the advertising matter can be seen and read without being artificially illuminated, but this does not seem to me to destroy the essential *per se* character of the articles themselves. An ordinary lamp shade does not cease to be one when the light which it covers does not happen to be burning, and a shade is a shade whether it covers a weak bulb or a strong one.

That the articles are designed primarily for advertising uses is quite correct, of course, but it is a form of advertising by means primarily of artificial illumination, and the globes or shades are articles used in connection with such artificial illumination. It seems to me they fall squarely within the description given in paragraph 218 (c) of the Tariff Act of 1930, and that the collector's classification was correct.