SOLOMON & SON *v.* UNITED STATES (No. 2526) [1]

1. RELATIVE SPECIFICITY—USE—"ILLUMINATING ARTICLES," PARAGRAPH 218, AND "IMITATION SEMIPRECIOUS STONES FACETED," PARAGRAPH 1429, TARIFF ACT OF 1922.

The expression of paragraph 218, Tariff Act of 1922, "illuminating articles * * *·· for use in connection with artificial illumination" being limited as to use, is more specific than the provision of paragraph 1429, for "imitation precious stones, cut or faceted, imitation semiprecious stones, faceted," which is not limited as to use.

2. CONSTRUCTION, PARAGRAPH 218, TARIFF ACT OF 1922—"ILLUMINATING ARTICLES."

The provision of paragraph 218, Tariff Act of 1922, for illuminating articles includes such, whether decorative or merely practical. The character, degree, or extent of illumination furnished by an article is not a proper test, if it is chiefly used in connection with artificial illumination in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.

3. IMITATION PRECIOUS STONES, PARAGRAPH 1429, TARIFF ACT OF 1922.

Color alone is not sufficient to constitute an imitation precious or semiprecious stone under paragraph 1429, Tariff Act of 1922. *United States* v. *Judae & Co.,* 13 Ct. Cust. Appls. 164, T. D. 41024.

4. "GLASS STONES" FOR AUTOMOBILE LIGHTS.

Pieces of glass, faceted, flat on one side and convex on the other, some red, some green, and some uncolored, invoiced as "glass stones," used mainly for automobile lamps, are not articles composed of glass or paste, "cut or colored," not specially provided for, under paragraph 218, Tariff Act of 1922, because they are specially provided for in the same paragraph as articles for use in connection with artificial illumination. Whether or not they may be also "imitation precious stones, cut or faceted" or "imitation semiprecious stones, faceted" under paragraph 1429, is not decided.

---

[1] T. D: 41256.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, G. A 8866 (T. D 40423)

[Affirmed.]

*Allan R. Brown* for appellants.

*William W. Hoppin,* Assistant Attorney·General (*Charles D. Lawrence* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 5, 1925, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Imported merchandise, described in the invoice as "glass stones," and consisting of pieces of glass, faceted, flat on one side and convex on the other, some red, some green, and some uncolored, was assessed for duty by the collector at 55 per centum ad valorem as articles composed of glass or paste, "cut or colored," under paragraph 218 of the Tariff Act of 1922, which reads as follows:

PAR. 218. Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing and rods, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 65 per centum ad valorem; illuminating articles of every description, including chimneys, globes, shades and prisms, for use in connection with artificial illumination, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 60 per centum ad valorem; all glassware commercially known as plated or cased glass, composed of two or more layers of clear, opaque, colored, or semitranslucent glass, or combinations of the same, 60 per centum ad valorem; table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem; table and kitchen articles and utensils, composed wholly or in chief value of glass or paste, or a combination of glass and paste, when pressed and unpolished, whether or not decorated or ornamented in any manner or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), whether filled or unfilled, or whether their contents be dutiable or free, 50 per centum ad valorem: *Provided,* That any of the articles specified in this paragraph, if containers of merchandise subject to an ad valorem rate of duty or to a rate of duty based in whole or in part upon the value thereof, shall be dutiable at the rate applicable to their contents, but not less than the rate provided for in this paragraph: *Provided further,* That for the purposes of this act, bottles with cut-glass stoppers shall with their stoppers be deemed entireties.

The importers claimed in their protest that the merchandise was properly dutiable as "imitation precious stones, cut or faceted, or as imitation semiprecious stones, faceted," at 20 per centum ad valorem under paragraph 1429 of the Tariff Act of 1922, which reads as follows:

PAR. 1429. Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken, any of the foregoing not set, and diamond dust, 10 per centum ad valorem; pearls and parts thereof, drilled or undrilled, but not set or strung, 20 per centum ad valorem; diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, 20 per centum ad valorem; imitation precious stones, cut or faceted, imitation semiprecious stones, faceted, imitation half pearls and hollow or filled pearls of all shapes, without hole or with hole partly through only, 20 per centum ad valorem; imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted, imitation jet buttons, cut, polished or faceted, and imitation solid pearls wholly or partly pierced, mounted or unmounted, 60 per centum ad valorem.

On the trial in the court below the manager of the import department of the appellants was the only witness called to testify. We quote the material part of his testimony:

\*          \*          \*          \*          \*          \*          \*

Q. In what size do they appear on this invoice—A. They range in diameter from ⅝ inch to 1 inch, and at times they run slightly over 1 inch.

Q. This particular invoice you have looked at they order in over 1 inch—A. Not on those invoices; probably other invoices will contain slightly over 1 inch

Q. The others you state differ in color—A. That is right.

Q. Are they all faceted?—A. All the same shape and same design and the same size.

Q. Were you dealing in them in 1922 and before that time?—A. Yes, sir.

Q. Approximately how long have you been handling articles like that?—A. About 10 years.

Q. At wholesale?—A. Yes, sir.

Q. And you have made purchases and sale during that time?—A. Yes, sir.

Q. In September, 1922, and before that time what was the name by which these articles were bought and sold in the wholesale trade in this country?—A. We have always called them jewels or glass *stones.*

Q. What is the object of having them faceted and *colored?*—A. So as to give them the appearance of the genuine stone.

Q. *And what are they used for?*—A. *They are used primarily for lamps—automobile lamps.*

Q. *Can you mention any other use?*—A. *They are used to some extent in connection with ornamenting stained glass windows.*

By Mr. CARTER:

Q. What colors did you say these came in on this invoice?—A. Blue green, which would be equivalent to an emerald green, ruby, and crystal.

Q. Is ruby a red color?—A. Yes.

Q. This is crystal?—A. That is right.

Q. Those are the only colors on this invoice?—A. I believe those are the only colors on this invoice. They do at times come in different colors, however.

Q. We are just talking about this particular shipment now.—A. The *colors here are crystal, ruby, and green.*

Q. Here is another invoice. Are they the same on this one?—A. The colors are the same on this invoice.

Q. *And you say they are used on automobile lamps and bicycle lamps?*—A. *Yes, sir.*

Q. *And the light shines through these?*—A. *Yes, sir.*

Q. *And the red ones are for the tail lights of automobiles?*—A. *That is right.*

Q. Please look at this Exhibit 1. Is it cut?—A. Yes, sir, they are all just like that one.   (Italics ours.)

The board held: That the articles in question were "illuminating articles" and came within the provisions for such articles contained in paragraph 218, *supra;* that they were equally provided for in paragraph 1429, *supra,* as "imitation precious stones, cut or faceted," or as "imitation semiprecious stones, faceted;" and that the provision in paragraph 1460 of the Tariff Act of 1922, requiring that "if two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates," applied to the articles in question. Therefore, without approving the collector's classification, the board overruled the protest.

It is claimed by counsel for the appellants that the articles in question are not "illuminating articles" within the meaning of paragraph 218, *supra,* because "'to illumine' means to give light to or to light up, as to illuminate a room," whereas these articles are used on automobile "lamps" or "lights" for ornamental effect and, although the light shines through them, they do not in fact illuminate anything; that they are imitation precious or semiprecious stones and are properly dutiable as such; that even if they are illuminating articles, they are, nevertheless, more specifically provided for as imitation precious or semiprecious stones under paragraph 1429; *supra;* and that paragraph 1460, upon which the board based its decision, has no application to the issues involved.

The Government, however, contends that the articles in question are illuminating articles and are more specifically provided for in paragraph 218, *supra,* as such articles, than in paragraph 1429, *supra,* as imitation precious or semiprecious stones.

It is obvious that the involved articles are not properly dutiable under paragraph 218, *supra,* as articles composed of glass or paste, "cut" or "colored," as such provisions are applicable only to such articles as are not otherwise specially provided for. These are specially provided for elsewhere in the act.

Congress has provided in paragraph 218, *supra,* for "illuminating articles of every description, including *chimneys, globes, shades,* and *prisms for use in connection* with artificial illumination." (Italics ours.) It is within the knowledge of every observing person that the most elaborate arrangements of various kinds and colors of glass are used in artificial illumination. Chimneys, globes, and shades of various

designs, shapes, and colors are used, often in connection with prisms, for artistic and beautiful lighting effects—not for the sole purpose of artificial illumination, but also for artistic and ornamental illumination. To secure the many desired effects, rays of light may be reflected, refracted, or dispersed. It seems unnecessary to discuss this proposition to any great length. It is perfectly obvious from the language of the provisions that it was intended by Congress to include within the scope of the paragraph all illuminating articles used in connection with artificial illumination whether decorative or merely practical. The articles mentioned in the paragraph are not such as generate light; they but disperse the rays of light to give the desired illuminating effect. Therefore they are for use in *connection with* artificial illumination.

The testimony in the record is direct and wholly uncontradicted that the articles in question are chiefly used for automobile lamps, and are so located on such lamps as to cause the rays of light emanating from an electric light bulb to pass through them. But it is argued in effect that they are illuminated and not illuminating articles because of the limited extent or degree of illumination afforded by them; that is, because of their position on automobile lamps, they do not, in fact, illuminate any particular object or thing. We think this argument is beside the question. A glass prism, attached to a chandelier of elaborate proportions, does not in itself afford illumination for a room or any particular object in a room, and yet, as the rays of light pass through it, the desired illuminating effect is secured. We do not believe that the character, degree, or extent of illumination furnished by an article is a proper test under the statute, if it is chiefly used in connection with artificial illumination and in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.

We think that the articles in question are "illuminating articles" within the meaning of the provisions of paragraph 218, *supra*. Are they imitation precious stones, cut or faceted, or imitation semi-precious stones, faceted?

The evidence in the case upon this question consists of samples of the merchandise and the following testimony:

Q. In September, 1922, and before that time what was the name by which these articles were bought and sold in the wholesale trade in this country?—A. *We* have always called them jewels or glass stones.

Q. What is the object of having them faceted and colored?—A. So as to give them the *appearance* of the genuine stone.

Q. And what are they used for?—A. They are used primarily for lamps—automobile lamps.

Q. Can you mention any other uses?—A. They are used to some extent in connection with ornamenting stained glass windows. (Italics ours.)

The appellants failed to establish, if that was their purpose, that the articles in question were commercially known as jewels or glass stones.  Therefore, the only testimony in the record to support the board's finding that the articles were imitation precious stones, cut or faceted, or imitation semiprecious stones, faceted, is that they were colored and faceted to give them the *appearance* of the genuine stone.

In the case of *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164. T. D. 41024, this court in an opinion by Smith, Judge. said:

> According to the testimony of experts and dealers in imitation precious and semiprecious stones, the material used for making imitation precious or semiprecious stones is a composite glass containing lead which may be cut and faceted, thereby producing imitation precious or semiprecious stone. It further appeared that from such composite glass when backed with proper material imitations may be made even of diamonds.  Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone and we'must hold that the board's finding that the beads in controversy are not imitation precious or semiprecious stones is fully supported by the evidence.

The above quoted statement seems to be supported by authoritative treatises on the subject.  The New International Encyclopedia, vol. 8, pp. 518 and 758.

In regard to the evidence upon this question the board said:

> It is evident not only from the testimony but from an examination of the samples that they imitate precious or semiprecious stones and that they are faceted.

We have some reservation in subscribing to the board's decision in this regard.  Our views of this case are such, however, as to make it unnecessary to decide this question.  Therefore, without passing upon the proposition, but assuming for the purposes of this case that the articles in question are provided for in paragraph 1429, *supra*, as "imitation precious or semiprecious stones," the question is presented as to the relative specificity of the competing provisions.

It will be noted that the provision for "imitation precious stones" contained in paragraph 449 of the tariff act of 1909, and a similar provision contained in paragraph 357 of the tariff act of 1913, were limited to such as were "for use in the manufacture of jewelry."  The provision for such articles in paragraph 1429, *supra*, is not so limited. It would seem, therefore, that Congress, in the enactment of paragraph 1429, *supra*, did not intend to limit the provision for imitation precious stones to such only as were for use in the manufacture of jewelry. This provision is a general one without expression of limitation as to use.  The provision in paragraph 218, *supra*, for illuminating articles of every description is specially limited to such articles as are for use in connection with artificial illumination.  Accordingly, articles not chiefly used in connection with artificial illumination, would not come within the provision for "illuminating articles," although otherwise coming within its terms.

If the articles in question come within the general provision for "imitation precious stones, cut or faceted," which is not limited as to use, and also within the provision for "illuminating articles of every description," which is specially limited to a particular use, the designation according to a specific use must prevail over the general description without limitation as to use. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979, and cases therein cited.

For the reasons stated, we think that the articles in question were properly dutiable as "illuminating articles" under paragraph 218, *supra.* The court below having reached the same conclusion, its judgment is *affirmed.*