UNITED STATES *v.* HORNI SIGNAL MFG. CO. INC. (No. 4242) [1]

---

[1] C. A. D. 106.

United States Court of Customs and Patent Appeals, March 4, 1940

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument February 9, 1940, by Mr. Oliver and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Government has here appealed from the judgment of the United States Customs Court, First Division, which sustained the protest of the appellee against the collector's assessment of duty on certain merchandise invoiced as "Glass balls—crystal" at 60 per centum ad valorem under paragraph 218 (c) of the Tariff Act of 1930 as illuminating glass articles, unfinished, for use in connection with artificial illumination.

The importer, in its suit to recover the duties so assessed and paid, made the claim, among others, that the merchandise was dutiable as a manufacture of glass at 50 per centum ad valorem under paragraph 230 (d) of said act.

The pertinent portions of said paragraphs 218 and 230 follow:

PAR. 218 * * * (c) Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination: Prisms, glass chandeliers, and articles in chief value of prisms, **60** per centum ad valorem; chimneys, 55 per centum ad valorem; globes and shades,

70 per centum ad valorem; all others, 60 per centum ad valorem: *Provided,* That parts not specially provided for, wholly or in chief value of glass, of any of the foregoing shall be subject to the same rate of duty as the articles of which they are parts.

PAR. 230 * * * (d) All glass, and manufactures of glass, or of which glass is the component of chief value, except broken glass or glass waste fit only for remanufacture, not specially provided for, 50 per centum ad valorem.

Two exhibits were introduced in evidence, the first, Illustrative Exhibit 1, which represents the imported article, and Illustrative Exhibit A, which represents the imported article in the condition in which it is ultimately used. Illustrative Exhibit 1 is a small, globular ball-like form of clear, molded glass. Around the same at a point near the center is a shoulder formed by making the back half larger in diameter than the front half. After importation, the back portion or large portion of the globular glass form is coated with silver and upon the silver is superimposed an electrolitic deposit of copper, making a mirror of the same. Over the deposit of copper is a baked-on coating of enamel which protects same from the elements. The imported articles are used in metal and wooden signs and are so designed that when the headlights of automobiles shine on the signs the buttons reflect the light, the buttons being so arranged as to form words or signs, such as the word "Stop" or an arrow. No other use of the goods is shown or claimed. The signs are used largely in connection with automobile traffic.

The importer introduced the testimony of two witnesses, one, Ralph Estreich, being an employee in the United States Customs Service and whose testimony related to the character of glass of which the imported article was composed. The other witness, Horace J. Goodwin, was sales engineer and manager for appellee, manufacturer of signs, in the construction of which the imported merchandise is used. The witness in part said:

Q. How is Illustrative Exhibit A used?—A. They are usually used in metal signs, although they can be used in wooden signs. It is usually sheet metal, with a hole punched in three-quarters of an inch in diameter, which is the diameter of the lens portion. Then the button is inserted in the hole, so that the shoulder of the button goes back of the shoulder. Then there is a galvanized sheet housing that is screwed up tight and holds the button in place.

Q. How did Illustrative Exhibit A operate?— A. It doesn't operate at all. In a sense when these signs are put up—you have seen them alongside the road—"Stop" signs and speed limit signs. As your automobile headlights shine on them they reflect, indicating where they are, and whatever legend they wish is spelled out.

* * * * * * *

X Q. When the light is thrown on articles like Illustrative Exhibit A it immediately illuminates?—A. No; it reflects the light rays back to you. It doesn't illuminate, only insofar as it reflects back the light rays shone upon it.

X Q. If it didn't illuminate how could you see it?—A. It is self-illuminating.

X Q. You call Illustrative Exhibit A self-illuminating?—A. That is the name we put on the signs, self-illuminating.

X Q. So articles like Illustrative Exhibit A you hold out for sale as self-illuminating articles?—A. What we bill them as and catalogue them as.

X Q. Are they known in your trade as self-illuminating articles?—A. Yes, sir.

X Q. Bought and sold as such?—A. I believe so.

X Q. Do you advertise articles like Illustrative Exhibit A in your catalogue as self-illuminating articles?—A. Yes, sir.

X Q. Have you personally seen articles like Illustrative Exhibit A in signs, illuminating at night, after a light was thrown upon them?—A. Yes, sir.

The trial court in its decision said:

The testimony is clear and convincing that in the imported condition it does not illuminate, either by reflection or otherwise. An inspection of the sample itself discloses this fact. We must take the article for dutiable purposes in its condition as imported. When finished, as shown by Illustrative Exhibit A, it becomes an article that reflects light for the purposes described, by reason of the material placed on the back thereof, as shown by the testimony, after it arrives in this country.

A careful reading of the statute establishes in our judgment that it is not within the purview of paragraph 218 (c), which refers to finished or unfinished glass articles "for use in connection with artificial illumination." It requires the doing of something after it is imported to render it of "use in connection with artificial illumination." The glass article itself, in its imported condition, cannot be used in connection with artificial illumination, for it will not illuminate or reflect anything. Exhibit 1, as stated, has not any illuminating or reflecting qualities whatever. It is merely a lump of clear glass of the shape described. It would seem under the holding in *Petrocelli, Beusse & Rogers* v. *United States*, T. D. 46269, 63 Treas. Dec. 515, inasmuch as this merchandise *in its imported condition* does not reflect light, that it is not dutiable under paragraph 218 (c). In its imported condition Exhibit 1 is an article of glass without any illuminating power. For that reason it would seem that it should be classifiable under paragraph 230 (d) as a manufacture of glass not specially provided for. To be unfinished illuminating glassware an article should have some illuminating qualities, or as was said in *Solomon* v. *United States*, 13 Ct. Cust. Appls. 353, T. D. 41256, "pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes."

It will be noticed that paragraph 218 (c) provides for "Illuminating articles of every description, *finished or unfinished,* wholly or in chief value of glass, for use in connection with artificial illumination." (Italics ours.) It seems to us so clear as to require little discussion here that the trial court erred in stating that to be "unfinished illuminating glassware an article should have some illuminating qualities" so as to fall within the expression "pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes" used in *Solomon & Son* v. *United States*, 13 Ct. Cust. Appls. 353, T. D. 41256. Unquestionably, the article at the time of importation was clearly dedicated to but one use—to the making of a glass reflector to be used in signs to give information to the occupants of automobiles when the automobile lights were directed toward the sign. We can visualize many unfinished illuminating articles, con-

·cerning which there could be no question as to their classification, which, in the condition imported, could not possibly be used in connection with artificial illumination. However, if, in their unfinished ·state, they were dedicated to a chief use, when finished, in connection with artificial illumination, the requirements of the statute would be met. *Nyman & Schultz* v. *United States*, 14 Ct. Cust. Appls. 432, T. D. ·42060; *United States* v. *Schaeffer & Budenburg Corp.*, 18 C. C. P. A. (Customs) 338, T. D. 44587; *United States* v. *Cartier (Inc.)*, 15 Ct. ·Cust. Appls. 334, T. D. 42493; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669.

The question, therefore, to be decided is: When finished for its ·ultimate use, is the imported merchandise to be regarded as illuminating articles for use in connection with artificial illumination?

Besides contending that the articles in their imported condition are ·not illuminating articles, the importer contends here that in their finished state they are not such for the reason that they are illuminated articles rather than illuminating articles and that the articles illuminate ·nothing. The importer in its brief presents the following contention:

It can hardly be said that the completed reflector buttons constitute illuminating articles within the foregoing definition. The reflector buttons, as their name ·indicates, merely *reflect* illumination. They are not, in and of themselves, any ·source of illumination whatever. They merely glisten or shine when light is ·thrown upon them. The reflector buttons serve no purpose other than would be ·served by a fence painted white, or a white line in the road, or a pool of water, or a ·window of a farmhouse, or a mirror, or anything else which would serve to reflect ·some of the light from automobile lamps.

While it is pointed out by the importer that some of the decisions ·of this court hereinafter referred to hold that to be an illuminating article it is not necessary that the article illuminate something, it ·contends, nevertheless, that in order that the article respond to the ·controverted tariff term, it would have to serve not only illuminating purposes, such as are served by those articles specifically named in the ·paragraph, and be *ejusdem generis* therewith, but that the article must be "either physically connected, or if not physically connected, at ·least an entity or entirety with the lighting appliance."

The quoted part of the last-stated contention ·of the importer ·presents the only question involved in this case which has not been ·passed upon in cases decided by this court. We are of the opinion, ·however, that the contention of appellee that in order to be an illuminating article it is a necessary requirement that the article be ·physically connected to the lighting appliance, or an "entity or entirety with the lighting appliance" is without merit.

A leading case by this court in which the construction and application of paragraph 218 of the Tariff Act of 1922, the predecessor of ·paragraph 218 of the Tariff Act of 1930, was involved, is *Solomon &*

*Son* v. *United States*, *supra*. We had before us there faceted glass stones which were used on automobile and bicycle lamps in such manner that dimmed rays of light emanating from an electric-light bulb passed through them. The illumination of the lamps was affected by the deeply-colored glass to the extent that the lamps did not illuminate any particular object or thing. The glass of the lamps themselves was illuminated. This court held that the stones were illuminating articles for use in *connection* with artificial illumination. We there said:

> * * * But it is argued in effect that they are illuminated and not illuminating articles because of the limited extent or degree of illumination afforded by them; that is, because of their position on automobile lamps, they do not, in fact, illuminate any particular object or thing. We think this argument is beside the question. A glass prism, attached to a chandelier of elaborate proportions, does not in itself afford illumination for a room or any particular object in a room, and yet, as the rays of light pass through it, the desired illuminating effect is secured. We do not believe that the character, degree, or extent of illumination furnished by an article is a proper test under the statute, if it is chiefly used in connection with artificial illumination and in such manner as *to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.* [Italics not quoted]

The court had theretofore in the opinion said:

> * * * Chimneys, globes, and shades of various designs, shapes, and colors are used, often in connection with prisms, for artistic and beautiful lighting effects—not for the sole purpose of artificial illumination, but also for artistic and ornamental illumination. To secure the many desired effects, rays of light may be reflected, refracted, or dispersed. It seems unnecessary to discuss this proposition to any great length. It is perfectly obvious from the language of the provisions that it was intended by Congress to include within the scope of the paragraph all illuminating articles used in connection with artificial illumination whether decorative or merely practical. The articles mentioned in the paragraph are not such as generate light; they but disperse the rays of light to give the desired illuminating effect. Therefore they are for use in *connection with* artificial illumination.

In *United States* v. *Wyle & Bros.*, 14 Ct. Cust. Appls. 297, T. D. 41910, this court held that imported "bobeches," "leaves," and "bunches of grapes" made of glass and which were all parts of lighting fixtures and which did not illuminate but which reflected, refracted, dispersed, colored or otherwise affected the light which emanated from a light source in the fixture, were illuminating articles for use in connection with artificial illumination. After in great detail reciting the function and characteristics of the articles involved in that case this court said:

> In the case at bar, we think all of the exhibits are used in connection with artificial illumination, and that they do affect the light; to what extent or with what effect, is immaterial.

The case of *Weiss & Biheller* v. *United States*, 18 C. C. P. A. (Customs) 293, T. D. 44503, involved wall brackets and chandeliers used in connection with electric lighting. The wall brackets were in chief value of glass. Upon these brackets electric-light candles, glass pendants, and decorations were attached. The imported merchandise there also involved double wall brackets in chief value of glass without pendants or decorations. There were also involved chandeliers containing electric-light candles, to which were attached glass ornaments imitating fruit. Each of the articles at bar there was shown by the record to be when in use "a brilliant object" which "refracts and reflects the light, and that the refraction and the reflection bring out the color of the fixture." The merchandise there was held to be provided for in paragraph 218 of the Tariff Act of 1922 as "illuminating articles of every description * * * for use in connection with artificial illumination."

While there are other cases which may have a bearing on the issue involved here, we think the principle laid down in the three last-above-cited cases is controlling of decision here. It will be noticed, however, that in all those cases there was a physical connection between the lighting source and the imported glass article.

The importer and the trial court relied upon the trial court's holding in *Petrocelli, Beusse & Rogers et al.* v. *United States*, T. D. 46269, 63 Treas. Dec. 515, where it was held, that unfinished, faceted glass articles in ruby and green colors used chiefly to ornament the bolt heads on automobile license plates, were not dutiable under the illuminating article paragraph. It seems that the trial court used this decision only on the phase of the case relating to the unfinished state of the imported articles at bar. The importer, however, urges that the case is in point inasmuch as the glass articles there were comparable to those at bar; that in both cases the purpose served is merely to reflect the light rays from approaching automobile lamps; and that the court there held that they were not illuminating articles. It is unnecessary to discuss this decision in detail since it is obvious that our conclusion reached here is contrary to the conclusion which the importer contends the trial court reached there.

It must be remembered that the phrase "Illuminating articles of every description, finished or unfinished, * * * for use in connection with artificial illumination" is a broad one. The word "connection" there must not be given a meaning which requires that the illuminating article which acts to "pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes" must be physically connected with the light. Things may be used in "connection" with others without being in physical contact with them. The term is used in a broader sense.

One of the definitions given in Webster's New International Dictionary of the word "connection" is:

A tie of causality, mutual dependence, logical sequence or the like; relation of things when one of them is involved in another.

"Association" is given as a synonym for "connection." The following is given as an example of the use of the word "connection": "the word varies in meaning according to the *connection* in which it is used."

In the instant case, the glass balls reflect the light which shines upon them from the automobile headlights. Although there is no direct connection between the balls and the headlight fixtures, there is a direct connection between the balls and the light. The importer has made one contention which implies that the glass balls involved have nothing more to do with the automobile light than does the sign upon which the balls are arranged. This contention, of course, is untenable. It is common knowledge that the sign itself would be of little value in guiding motorists were it not for the reflection of the light from the glass, and we think that the glass articles at bar are unfinished glass illuminating articles for use in connection with artificial illumination.

The judgment of the United States Customs Court is *reversed*.

### DISSENTING OPINION

LENROOT, Judge: I cannot agree to the conclusion reached by the majority herein, for the reason that in my opinion, under the evidence in the case, the involved articles are not "for use in connection with artificial illumination." I think Congress clearly contemplated in the language above quoted that there should be some fixed source of illumination in connection with which the articles embraced in the paragraph are used.

The involved articles, when completed, will reflect the light emanating from the headlights of an automobile for perpaps two seconds, and when the next automobile appears there is another reflection for the same length of time, and so on indefinitely until at the end of a year there may have been ten thousand or more separate sources of illumination. I cannot bring myself to the conclusion that Congress, when it enacted this provision, ever intended that the term "in connection with artificial illumination" should include the momentary reflections of the light from the headlights of an automobile.

All of the cases which have come before this court under this subparagraph have involved articles connected with a single source of illumination, either as integral or component parts thereof, and the same is true of all articles *eo nomine* designated in the subparagraph.

Considering the uses to which the involved articles are put, when finished, I am satisfied that Congress never intended that such or similar articles should be classified under the provisions of paragraph 218 (c), and therefore in my opinion the judgment of the lower court should be affirmed, although I do not agree with all of the reasons given by the trial court for its decision.

I am authorized to say that Presiding Judge Garrett concurs in this dissent.