(C.D. 3849)

Ross Products, Inc. *v.* United States

United States Customs Court, Second Division

(Decided June 17, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Dominick Minerva,* trial attorney), for the defendant.

Before Rao and Ford, Judges, and Oliver, Senior Judge

Oliver, Judge: The imported merchandise involved in the two protests consolidated for trial herein was classified as illuminating articles of base metal, other than table, floor and other portable lamps of brass for indoor illumination, and was assessed at the rate of 19 per centum ad valorem under item 653.40, Tariff Schedules of the United States.

The plaintiff claims that the merchandise is properly dutiable as electrical articles, not specially provided for, at the rate of 11.5 per centum ad valorem under item 688.40, Tariff Schedules of the United States.

The provisions of the Tariff Schedules of the United States pertinent hereto are as follows:

Classified under:

Illuminating articles and parts thereof, of base metal:

$*$ $*$ $*$ $*$ $*$ $*$ $*$

Other:

$*$ $*$ $*$         Table, floor and other portable lamps for indoor illumination, of brass _____ $*$ $*$ $*$

653.40         Other _____ 19% ad val.

Claimed under:

688.40   Electrical articles, and electrical parts of articles, not specially provided for _____ 11.5% ad val.

The plaintiff also claimed under item 683.80 but did not press the claim. It is therefore deemed abandoned.

The record herein consists of the testimony of two witnesses, one for the plaintiff and one for the defendant. In evidence are plaintiff's exhibits 1 and 2, being representative samples of the merchandise in protests 66/53636 and 66/53095, respectively, which were consolidated for trial. It was stipulated between counsel that exhibit 2 is usually imported with a bracket which is not with the sample.

Mr. Hyman Ross testified for the plaintiff substantially as follows: He is chairman of the board of the plaintiff corporation, and participates in purchasing, styling, creating, and designing various items of merchandise which they sell and distribute. He has been president of the plaintiff corporation since 1948 when they incorporated, and was a partner prior thereto in a partnership which he had established in 1932.

Mr. Ross testified that he was familiar with exhibits 1 and 2, and that the white woven materials are polyvinyl chloride. He stated that he originated the idea of exhibits 1 and 2 while visiting a basket weaver in Hong Kong. He had a manufacturer make up some samples of bird cages, being particularly interested in a pagoda-shaped bird cage, for which he had a manufacturer of artificial flowers make up some roses for use therein. It was his idea also to utilize the tiny minature light bulbs in a series set on a wire in the buds of the artificial roses. The light bulbs were variously tinted and cost approximately 1 cent each.

The witness stated of the bulbs:

A. They are made so that they cannot light up by themselves but if they are employed in a series of 8 or 10 or 6 they light up on one string effect. Furthermore, they were very inexpensive——

$*$     $*$     $*$     $*$     $*$     $*$     $*$

$*$ $*$ $*$ they cost about a penny apiece. And I thought by employing these little bulbs and inserting them into the bud of the

flower, and by tinting the bulb so that only the tip of the light would protrude over the flower, it would give it a glistening or life-like effect like after the morning dew. They have this watery effect on the bulbs—on the flowers. Well, I made up a number of samples and they looked very effective on the arrangement * * *.

Concerning the purpose of the exhibits, the witness continued:

Q. Could you tell us for what purpose you designed this article?—A. Yes. Right from the inception I thought it would make a very attractive wall decoration or as an ornamental item to be used in the house. And I thought it had a lot of novelty effect. * * *

The witness testified that the tiny light bulb in the bud would not light independently, but must be employed in a string or series. By series, he stated, he meant the bulbs were on a cord, the light bulb filament being delicate and not built for a long period of steady light.

Mr. Ross identified the cardboard boxes in which exhibits 1 and 2 were imported and which were then received in evidence as plaintiff's exhibits 1–A and 2–A respectively. Plaintiff's exhibits 1 and 2, he stated, were designed to be used as a wall decoration, and "as the picture on the box shows they have a bracket which is put on the wall * * * and it simulates a bird cage." For years exhibits 1 and 2 were sold, he stated, to variety chain stores such as Woolworths, J. C. Penney, Newberry, McCrory's, G. C. Murphy, and practically every drug chain in the country such as Walgreen, People's Drug, Cunningham Drug. He had seen this merchandise in use in New York, Chicago, Los Angeles, San Francisco and Indianapolis. He saw them used in the living room, breakfast nook or kitchen, library, den, and terraces, hanging on the wall. Mr. Ross stated that he designed the bird cages to enhance the appearance of a room, and that he knew of no other use for them.

On cross-examination, the witness admitted that his company does not manufacture bulbs but stated that he visited a bulb factory. He did not know the total wattage of the bulbs on plaintiff's exhibits 1 and 2. He defined a planter as a container made of papier mache or wood designed for artificial flowers or ferns. It does not normally contain bulbs. He said that a pin-up lamp is one that is hung on the wall and accommodates a household bulb. Mr. Ross stated that if there were no lights on exhibits 1 and 2, the balance of the exhibit would serve the same function, that is, as a decoration. Plaintiff's exhibit 2, said the witness, is a relatively permanent article in that it has a bracket.

It was Mr. Ross' opinion that the merchandise at bar was not an illuminating article since you could not read by it, stating,

I would hardly call them an illuminating item. They don't throw off enough light. Most of the bulb is submerged in the petal of the flower itself. It wasn't designed to be an illuminating item. It was designed as a decorative item, give off just a sparkling effect to the flowers.

Mr. Jacob Fogelson, secretary of the New York Lamp and Shade Manufacturers Association since 1949, testified for the defendant. He stated that the association acts as a trade association or business league for manufacturers of lamps and shades in the metropolitan New York area. As secretary of the association, Mr. Fogelson conducts trade shows, administers a labor relation service, and advises manufacturers on anything that may affect them. The association operates the Chicago trade show, and has a committee which consults on the operation of the New York lamp show. The association also advises its members on business opportunities with the United States Government. Mr. Fogelson has been personally responsible for the operation of the Chicago trade show since 1950. This show is held semiannually and is open to manufacturers who exhibit not only lamps and shades but also decorative accessories such as sconces, tables, plaques, mirrors and picture frames. Additionally, Mr. Fogelson has visited trade shows in Los Angeles and San Francisco. He personally sets up the rules and regulations for the conduct of exhibitors, contents of exhibits and the materials that may be utilized in connection with the Chicago trade show. He has visited approximately 150 to 200 manufacturing plants throughout the country. Plaintiff's counsel conceded Mr. Fogelson's qualifications at this point in the proceedings:

MR. KAMNITZ: Your Honor, I think the witness has been qualified; I believe we should get down to the issue. I think this is irrelevant.

Mr. Fogelson continued by testifying that he has observed the operation of these plants and the manufacture of lamps beginning with simple assembly operations and encompassing factories where parts are manufactured, plated, polished, and then assembled.

Mr. Fogelson testified that he has observed novelty lamps in the home, and has seen them at various trade shows being exhibited and displayed. He stated that the lamp and shade industry broadly classified illuminating articles according to physical characteristics. Illuminating articles he regarded either as fixtures, which can be decorative or functional; or as lamps, which are movable and have a cord and plug for insertion into a base outlet. With respect to lamps, the classes range from table lamps to floor lamps and finally a broad classification of novelty lamps. The latter includes "planters, wall lamps, pin-up lamps, fluorescent lamps, television lamps, kiddy lamps, sconces, brackets and a number of others." A lamp in the trade is "a container of light." The light may be purely functional on one extreme or to enhance the decorative aspects of the particular article in which it is contained on the other extreme. An example of a purely functional purpose would be a bullet light, which is a bare shield with a bulb inside, utilized to concentrate light on a particular area. A purely

decorative lamp would be a work of art or an object that has a beautiful appearance with a light designed to enhance the decorative aspects of the article. An illuminating article in the lamp and fixture industry, he stated, is a fixture or a lamp, and plaintiff's exhibit 1 met his definition of an illuminating article.

The witness further defined a planter as a container composed generally of flowers, leaves, or ferns with a light bulb in it which brings out the beauty of the article in which it is contained. The purpose of the lights on plaintiff's exhibit 1 complies with the general purpose of a lamp to shed light and to enhance the beauty and the appearance of the article itself. Plaintiff's exhibit 2 meets his definition of an illuminating article, Mr. Fogelson stated.

The witness further testified that he is familiar with flashlights and that his definition of "movables" does not include flashlights. A flashlight, he said, is used for a specific purpose at a specific time and is then stored in a drawer, whereas a lamp is displayed at a particular place in the household until a decision is made to move it to another location.

Mr. Fogelson explained that if the lights on exhibit 1 were turned off they would not serve a function. He further stated that if there were no lights on exhibits 1 and 2 the balance of the exhibits would still act as decorative pieces similar to an ash tray, candy dish, or planter without any lights.

On cross-examination the witness specified that lamps are illuminating articles and the lamp and the household fixture have the same characteristics in common—they are designed to give both beauty and light. A fixture has been referred to in the trade as a lamp upside down, and in comparing fixtures and lamps, the witness said, the light will either be functional as in a stark fixture or comparable stark bullet light, which is a lamp, or will be decorative as in great chandeliers worth five or even ten thousand dollars. The latter have a similarity in purpose with antique lamps or lamps which are works of art, where the bulbs merely enhance the work of art. The function of the bulbs on exhibits 1 and 2, the witness stated, is to give light and, in addition, to bring out the beauty of the decoration, whereas a functional lamp gives sufficient light so that someone may read by it, and exhibits 1 and 2 are not functional.

On redirect examination the witness reiterated that he was using the word "functional" in the reading standard sense of the term. Night lights, said the witness, are illuminating articles, and the trade recognizes lower than 5 watts as illumination. Mr. Fogelson did not know the total wattage of the bulbs on exhibits 1 and 2. It was his opinion, however, that both plaintiff's exhibits 1 and 2 give more light than a night light. The series aspect of the lights on both exhibits may be compared to Christmas tree lights which also operate in series.

The record in the case at bar presents to this court the question whether the imported electrically illuminated bird cages were properly classified by the collector of customs as illuminating articles under item 653.40 of TSUS, or whether they should have been classified under item 688.40 of TSUS as electrical articles, as claimed by the plaintiff.

The plaintiff's witness, Ross, stated that he did not consider the articles as an illuminating article because its primary purpose was its use as a decoration. The defendant's witness, Fogelson, on the other hand, stated that in his opinion the electrically illuminated bird cage met his definition of an illuminating article. These two conflicting opinions are of course not binding on the court since they represent the very issue at bar, which is a matter of law for the court to decide.

The term "illuminating articles" must be interpreted and applied herein for tariff purposes in its common and ordinary meaning since the record, in our opinion, does not establish a commercial designation for that term. (See *Passaic Worsted Co. et al.* v. *United States*, 17 CCPA 459, 461-62, T.D. 43916 (1930), and cases cited therein.)

In *United States* v. *General Display Case Co., Inc.*, 21 CCPA 542, T.D. 46976 (1934), a case on the subject of illuminating articles wherein further cases on the subject are cited and analyzed, our appellate court stated at page 546:

> These cases emphasize the thought that the provision for illuminating articles to be used in connection with artificial illumination includes only such articles as are chiefly used in connection with artificial illumination for illuminating purposes. If they are chiefly used for some other purpose, and were constructed for that purpose, and if the illumination provided by them is minor and incidental, only, to their chief use, and are not intended for or used for the purpose of illuminating the surrounding atmosphere, then they should not be classified as illuminating articles, under said paragraph 218(c) [of the Tariff Act of 1922].

We do not believe, however, that the *General Display* case is very helpful since it involved paragraph 218(c) of the Tariff Act of 1930 which covered illuminating articles of glass for use in connection with artificial illumination. As was pointed out in *Solomon & Son* v. *United States*, 13 Ct. Cust. Appls. 353, T.D. 41256 (1925), in connection with a predecessor of that paragraph, that provision does not cover articles which generate light, but those which disperse the rays of light to give the desired illuminating effect, and are used in *connection with* artificial illumination. The provision for illuminating articles in TSUS includes incandescent lamps designed to be operated by gas, and table, floor, and portable lamps for indoor illumination. Furthermore, the *Solomon* case construed the predecessor to paragraph 218(c) as including *ornamental* illumination. The court stated:

> * * * We do not believe that the character, degree, or extent of illumination furnished by an article is a proper test under the

statute, if it is chiefly used in connection with artificial illumination and in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.

The merchandise in the *General Display* case was used for advertiseing, which the court apparently did not consider either practical or ornamental illumination.

According to the testimony in the case at bar, the articles were designed to make use of the lights. The tint of the bulbs was carefully chosen to produce the kind of lighting effect desired. The lighting was to enhance the decorative effect of the articles. The bulbs gave light to the artificial flowers and would of course glow in a darkened room and give some light to the surrounding area.

The articles herein are comparable to the Christmas wreaths involved in *United States* v. *N. Minami & Co., Inc.*, 29 CCPA 169, C.A.D. 188 (1941), which were held dutiable as articles having as an essential feature an electrical element. That case involved Christmas wreaths constructed of wood-chip. To each wreath was attached a paper-covered electric wire cord having a socket for an electric light, there being a plug at one end for insertion into a wall socket. The wreath was used generally at Christmas time, lighted generally at night for decorative purposes. In the *Minami* case our appellate court pointed out that the electric light, although not lighted during daylight hours, was nonetheless essential, and that classification under paragraph 353 for articles having as an essential feature an electrical element or device was proper, stating (at page 173) :

> * * * From our examination of said Illustrative Exhibit A, we are satisfied that the electrical element or device therein may not properly be considered as a nonessential feature in the article. Its location in the lower center of the wreath, and the fact that it occupies considerable of the otherwise empty space there, should not be entirely ignored in determining the tariff status of the article. Its arrangement, and the way it is displayed, constitutes the electrical device a conspicuous and prominent part of the wreath. Surely, the electrical feature would mean something to a prospective purchaser who wanted that precise article, and in all likelihood it would be reflected in the price as compared with a wreath not so equipped.

In the course of the opinion, the court stated (p. 173) :

> We do not regard as having any particular force the argument to the effect that, because the wreaths are used solely for decorative purposes, the electrical element embraced therein and used in illuminating them is not an essential element. The electrical feature obviously must have been inserted in the wreaths to serve a desired purpose at a particular time and the mere fact that it is not used at all times would not, in our opinion, justify a hold-

ing that it is not essential. As a rule, electric lights do not burn during daylight hours except under unusual conditions, but the element which enables the light to be produced when desired is nonetheless essential. * * *

In the instant case the electrical element was intended to make the article more desirable, was used in illuminating it, and was essential for that purpose. It electrically illuminated the decoration and the area decorated.

See also *New York Merchandise Co. et al.* v. *United States*, 59 Cust. Ct. 75, C.D. 3081, 271 F. Supp. 308 (1967), where the court held that Christmas tree lighting sets were "illuminating articles." The court said (p. 78):

> On the matter of use, the court is of the opinion that use or chief use of the involved light sets cannot properly be regarded as a factor in determining whether such paragraph 353 merchandise comes within the designation "illuminating articles" as that term is used in the trade agreement modification in question. The electrical articles provision of paragraph 353 is not a use provision. *United States* v. *R. W. Cramer & Co*, *Inc.*, 22 CCPA 45, 51, T.D. 47049. * * *
>
> There are no guidelines in the trade agreement modification under review which would enable us to ascertain the thinking and intentions of the negotiators with respect to their indigenous use of the term "illuminating articles" in the treatment of paragraph 353 articles. Indeed, plaintiffs concede as much. And in the absence of such guidelines the court must proceed with caution so as not to arbitrarily circumscribe or restrict the intended meaning and scope of the term. The instant record clearly shows that the involved merchandise is valued for, and would be valueless without, its light-producing capacity. Such light-producing capacity is the *sine-qua-non* to the common and ordinary understanding of the word "illuminate" in the view of all of the lexicographers to whom our attention has been called by defendant's counsel. And it should be noted that this court has used the word "illuminated" when describing the function of Christmas tree lighting fixtures even when the words "illuminating articles" were not in issue. *New York Merchandise Co., Inc.* v. *United States*, C.D. 1003, *supra*, page 149. But now that these words are in issue, we would hardly be justified in adopting another usage therefor on the basis of the instant record which, in our opinion, does not support a consideration of a meaning of the term "illuminating articles" other than its common and ordinary meaning.

In another case, *Gallagher & Ascher Company* v. *United States*, 57 Cust. Ct. 348, C.D. 2813 (1966), it was held that fleur-de-lis and reindeer lighting sets, in chief value of plastic, containing small electric bulbs, wiring, etc., and used for decorative purposes around Christmas time, were dutiable by similitude to articles in chief value

of metal having as an essential feature an electrical element or device, under paragraph 353, as modified by T.D. 52739. The court said (p. 354):

> * * * The evidence in this record is sufficient to demonstrate that the results of the use of the imported fleur-de-lis and reindeer lighting sets are substantially the same as the uses made of articles enumerated in paragraph 353, that is, the establishment of a Christmassy decor to items in and around the house as well as to parts of the household itself. Whether the imported merchandise is employed on Christmas trees or in windows or on the copings of houses, it is performing the same decorative function of known articles in paragraph 353 and, what is more, this function is performed in substantially the same manner, namely, by electrically illuminating the decoration and the area decorated.

The merchandise here is not of the kind that has been considered dutiable under paragraph 397 because of the legislative history of proposed paragraph 387. *National Carloading Corp.* v. *United States,* 44 CCPA 77, C.A.D. 640 (1957); *Biddle Purchasing Co.* v. *United States,* 50 CCPA 71, C.A.D. 823 (1963). The proposed paragraph covered lighting fixtures, lamps, and candelabra, and, when it was not adopted, these articles were relegated to paragraph 397. However, as indicated in the *Minami* case, it did not cover all illuminating articles. The wreaths there were not held to be dutiable under paragraph 397 by any claimed resemblance to lighting fixtures. The same is true of the instant merchandise.

Based on all of the foregoing, particularly on the *Minami* and the *Solomon* cases, *supra,* the court is satisfied that the electrically illuminated bird cages herein were properly classified by the collector of customs under item 653.40 of TSUS as illuminating articles. The collector's classification is therefore affirmed, and the protests are overruled.

Judgment will issue accordingly.