(C.D. 3850)

Ross Products, Inc. *v.* United States

United States Customs Court, Second Division

(Decided June 17, 1969)

*William D. Ruckelshaus*, Assistant Attorney General (*Dominick M. Minerva, Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff. trial attorney), for the defendant.

Before RAO and FORD, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The imported merchandise involved in the protest herein is described on the invoice as "Electrified Aluminum/White PVC Bird Cage" sets, which were classified by the collector of customs under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, as a manufactured article in chief value of aluminum, not specially provided for, dutiable at 19 per centum ad valorem.

The plaintiff claims that the imported merchandise is properly dutiable at 12½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 55615, or, alternatively, at 13¾ per centum ad valorem under paragraph 353, as modified by T.D. 52739. Plaintiff contends that the imported merchandise has as an essential feature an electrical element or device and is, therefore, more specifically provided for by paragraph 353 than by paragraph 397 of the Tariff Act of 1930.

The Government claims in the alternative that the merchandise is an *illuminating article* under paragraph 397 of the said tariff act.

The pertinent provisions of the Tariff Act of 1930, as modified, are as follows:

Classified under: Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Composed wholly or in chief value of \* \* \* aluminum \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Not wholly or in chief value of tin or tin plate:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other, composed wholly or in chief value of \* \* \* aluminum \* \* \*_____　　19% ad val.

Alternate classification claimed by Government: Paragraph 397, as modified by T.D. 54108:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \* \* \* \* \* \* \*
>
>> Composed wholly or in chief value of \* \* \* aluminum \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:
>>
>> \* \* \* \* \* \* \*
>>
>>> Not wholly or in chief value of tin or tin plate:
>>>> Carriages \* \* \* and illuminating articles_____ 19% ad val.

Claimed by the plaintiff: Paragraph 353, as modified by T.D. 55615:

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> \* \* \* \* \* \* \*
>
>> Other (except \* \* \* illuminating articles \* \* \*)_____ 12½% ad val.

Paragraph 353, as modified by T.D. 52739:

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> \* \* \* \* \* \* \*
>
>> Other \* \* \*_____ 13¾% ad val.

The record in the case at bar consists of certain stipulations between the parties, and a representative sample of the imported merchandise, marked plaintiff's exhibit 1. It was stipulated that said exhibit 1, referred to also as HK-318, be deemed representative even though it has 10 bulbs whereas the imported article has only 8 bulbs. The record in *Ross Products, Inc.* v. *United States*, 62 Cust. Ct. 688, C.D. 3849 (protests 66/53095 and 66/53636, consolidated for trial), was incorporated in the case at bar, and the parties stipulated that the testimony of the respective witnesses with reference to plaintiff's exhibits 1 and 2 in

the incorporated case would be identical with the testimony they would give with reference to plaintiff's exhibit 1 in this case.

The record in the incorporated case consists of the testimony of two witnesses, one for the plaintiff and one for the defendant. In evidence are plaintiff's exhibits 1 and 2, being representative samples of the merchandise in protests 66/53636 and 66/53095, respectively. It was also stipulated between counsel that exhibit 2 is usually imported with a bracket which is not with the sample. The bracket is pictured, however, on exhibit 2-A, the carton in which exhibit 2 is packed.

Mr. Hyman Ross testified for the plaintiff substantially as follows: He is chairman of the board of the plaintiff corporation, and participates in purchasing, styling, creating, and designing various items of merchandise which they sell and distribute. He has been president of the plaintiff corporation since 1948 when they incorporated, and was a partner prior thereto in a partnership which he had established in 1932.

Mr. Ross testified that he was familiar with exhibits 1 and 2, and that the white woven material is polyvinyl chloride. He stated that he originated the idea of exhibits 1 and 2 while visiting a basket weaver in Hong Kong. He had a manufacturer make up some samples of bird cages, being particularly interested in a pagoda-shaped bird cage, for which he had a manufacturer of artificial flowers make up some roses for use therein. It was his idea also to utilize the tiny miniature light bulbs in a series set on a wire in the buds of the artificial roses. The light bulbs were variously tinted and cost approximately 1 cent each.

The witness stated of the bulbs:

A. They are made so that they cannot light up by themselves but if they are employed in a series of 8 or 10 or 6 they light up on one string effect. Furthermore, they were very inexpensive——

\* \* \* \* \* \* \*

\* \* \* they cost about a penny apiece. And I though by employing these little bulbs and inserting them into the bud of the flower, and by tinting the bulb so that only the tip of the light would protrude over the flower, it would give it a glistening or life-like effect like after the morning dew. They have this watery effect on the bulbs—on the flowers. Well, I made up a number of samples and they looked very effective on the arrangement \* \* \*.

Concerning the purpose of the exhibits, the witness continued:

Q. Could you tell us for what purpose you designed this article?—A. Yes. Right from the inception I thought it would make a very attractive wall decoration or as an ornamental item to be used in the house. And I thought it had a lot of novelty effect. \* \* \*

The witness testified that the tiny light bulb in the bud would not light independently, but must be employed in a string or series.

By series, he stated, he meant the bulbs were on a cord, the light bulb filament being delicate and not built for a long period of steady light.

Mr. Ross identified the cardboard boxes in which exhibits 1 and 2 were imported and which were then received in evidence as plaintiff's exhibits 1–A and 2–A respectively. Plaintiff's exhibits 1 and 2, he stated, were designed to be used as wall decorations, and "as the picture on the box shows they have a bracket which is put on the wall * * * and it simulates a bird cage." For years exhibits 1 and 2 were sold, he stated, to variety chain stores such as Woolworth, J.C. Penney, Newberry, McCrory's, G.C. Murphy, and practically every drug chain in the country such as Walgreen, People's Drug, Cunningham Drug. He testified that he had seen this merchandise in use in New York, Chicago, Los Angeles, San Francisco and Indianapolis, and saw them used in living rooms, breakfast nooks or kitchens, libraries, dens, and terraces, hanging on walls. Mr. Ross stated that he designed the bird cages to enhance the appearance of a room, and that he knew of no other use for them.

On cross-examination, the witness admitted that his company does not manufacture bulbs but stated that he had visited a bulb factory. He did not know the total wattage of the bulbs on plaintiff's exhibits 1 and 2. He defined a planter as a container made of papier mache or wood designed for artificial flowers or ferns. It does not normally contain bulbs. He said a pin-up lamp is one that is hung on the wall and accommodates a household bulb. Mr. Ross stated that if there were no lights on exhibits 1 and 2, the balance of the exhibits would serve the same function, that is, as decorations. Plaintiff's exhibit 2, said the witness, is a relatively permanent article in that it has a bracket.

Mr. Ross gave his opinion that the merchandise at bar was not an illuminating article since one could not read by it, stating,

> I would hardly call them an illuminating item. They don't throw off enough light. Most of the bulb is submerged in the petal of the flower itself. It wasn't designed to be an illuminating item. It was designed as a decorative item, give off just a sparkling effect to the flowers.

Mr. Jacob Fogelson, secretary of the New York Lamp and Shade Manufacturers Association since 1949 and a lawyer since 1932, testified for the defendant substantially as follows: He stated that the association acts as a trade association or business league for manufacturers of lamps and shades in the metropolitan New York area. As secretary of the association, Mr. Fogelson conducts trade shows, administers a labor relation service, and advises manufacturers on anything that may affect them. The association operates the Chicago trade show, and has a committee which consults on the operation of the New York lamp show. The association also advises its members on

business opportunities with the United States Government. Mr. Fogelson has been personally responsibile for the operation of the Chicago trade show since 1950. This show is held semiannually and is open to manufacturers who exhibit not only lamps and shades but also decorative accessories such as sconces, tables, plaques, mirrors and picture frames. Additionally, Mr. Fogelson has visited trade shows in Los Angeles and San Francisco. He personally sets up the rules and regulations for the conduct of exhibitors, contents of exhibits and the materials that may be utilized in connection with the Chicago trade show. He has visited approximately 150 to 200 manufacturing plants throughout the country. Plaintiff's counsel conceded Mr. Fogelson's qualifications for the defendant:

> MR. KAMNITZ: Your Honor, I think the witness has been qualified; I believe we should get down to the issue. I think this is irrelevant.

Mr. Fogelson continued by testifying that he has observed the operation of these plants and the manufacture of lamps beginning with simple assembly operations and encompassing factories where parts are manufactured, plated, polished, and then assembled.

Mr. Fogelson testified that he has observed novelty lamps in the home, and has seen them at various trade shows being exhibited and displayed. He stated that the lamp and shade industry broadly classified illuminating articles according to physical characteristics. Illuminating articles he regarded either as fixtures, which can be decorative or functional; or as lamps, which are movable and have a cord and plug for insertion into a base outlet. With respect to lamps, the classes range from table lamps to floor lamps and finally a broad classification of novelty lamps. The latter includes "planters, wall lamps, pin-up lamps, fluorescent lamps, television lamps, kiddy lamps, sconces, brackets and a number of others." A lamp in the trade is "a container of light." The light may be purely functional on one extreme or on the other extreme enhance the decorative aspects of the particular article in which it is contained. An example of a purely functional purpose, he stated, would be a bullet light which is a bare shield with a bulb inside, utilized to concentrate light on a particular area. A purely decorative lamp would be a work of art or an object that has a beautiful appearance with a light designed to enhance the decorative aspects of the article. An illuminating article in the lamp and fixture industry, he stated, is a fixture or a lamp, and plaintiff's exhibit 1 met his definition of an illuminating article.

The witness further defined a planter as a container composed generally of flowers, leaves, or ferns with a light bulb in it to bring out the beauty of the article in which it is contained. The purpose of the lights on plaintiff's exhibit 1 complies with the general purpose of a

lamp to shed light and to enhance the beauty and the appearance of the article itself, and plaintiff's exhibit 2, he stated, meets his definition of an illuminating article.

Mr. Fogelson explained that if the lights on exhibit 1 were turned off they would not serve a function. He further stated that if there were no lights on exhibits 1 and 2 the balance of the exhibits would still serve as decorative pieces similar to ash trays, candy dishes, or planters without lights.

On cross-examination, the witness specified that lamps are illuminating articles and the lamp and the household fixture have the same characteristics in common—they are designed to give both beauty and light. In comparing fixtures and lamps the witness said that the light may be either functional as in a stark fixture or comparable stark bullet light, or be decorative as in great chandeliers worth as much as five or ten thousand dollars. The latter have a similarity in purpose with antique lamps or lamps which are works of art, where the bulbs merely enhance the work of art. The function of the bulbs on exhibits 1 and 2 is to give light and, in addition, to bring out the beauty of the decoration, whereas functional lamps give sufficient light to read by. Exhibits 1 and 2, in his opinion, are therefore not functional lamps.

On redirect examination, the witness reiterated that he was using the word "functional" in the reading standard sense of the term. Night lights, said the witness, are illuminating articles, and the trade recognizes lower than 5 watts as illumination, although Mr. Fogelson did not know the total wattage of the bulbs on exhibits 1 and 2. It was his opinion, however, that both plaintiff's exhibits 1 and 2 gave more light than a night light, and the series aspect of the lights on both exhibits may be compared to Christmas tree lights which also operate in series.

The trial court in the incorporated case considered there first the question of whether the bird cage article was an illuminating article under item 653.40 of TSUS, as it was classified by the collector, or whether it was classifiable under item 688.40 as claimed by the plaintiff, as an electrical article.

In the case at bar, it is observed that the bird cage article was classified by the collector of customs under paragraph 397 of the Tariff Act of 1930, as an article in chief value of aluminum, not specially provided for, whereas the same article was classified in the incorporated case under item 653.40 of TSUS as an illuminating article having as an essential feature an electrical element. The language under which the same merchandise was classified is not the same under the tariff act as it is under the TSUS. The issues therefore are not precisely the same. However, the incorporated case refers to pertinent authorities which we find applicable to the situation at bar. There, after discussing the term "illuminating articles," the trial court considered

inapplicable the principles enunciated in the cited case of *United States* v. *General Display Case Co., Inc.*, 21 CCPA 542, T.D. 46976 (1934), on the ground that it involved illuminating articles of glass for use in connection with artificial illumination. The merchandise in the *General Display* case was used for advertising, which the court apparently did not consider either practical or ornamental illumination.

According to the testimony in the case at bar, and which we note from the incorporated case, the articles were designed to make use of the lights. The tint of the bulbs was carefully chosen to produce the kind of lighting effect desired. The lighting was to enhance the decorative effect of the articles. The bulbs gave light to the artificial flowers and would of course glow in a darkened room and give some light to the surrounding area.

The articles herein are comparable to the Christmas wreaths involved in *United States* v. *N. Minami & Co., Inc.*, 29 CCPA 169, C.A.D. 188 (1941), which were held dutiable as articles having as an essential feature an electrical element. That case involved Christmas wreaths constructed of wood-chip. To each wreath was attached a paper-covered electric wire cord having a socket for an electric light, there being a plug at one end for insertion into a wall socket. The wreath was used generally at Christmas time, and lighted generally at night for decorative purposes. In the *Minami* case our appellate court pointed out that the electric light, although not lighted during daylight hours, was nonetheless essential, and that classification under paragraph 353 for articles having as an essential feature an electrical element or device was proper, stating (at page 173):

> * * * From our examination of said Illustrative Exhibit A, we are satisfied that the electrical element or device therein may not properly be considered as a nonessential feature in the article. Its location in the lower center of the wreath, and the fact that it occupies considerable of the otherwise empty space there, should not be entirely ignored in determining the tariff status of the article. Its arrangement, and the way it is displayed, constitutes the electrical device a conspicuous and prominent part of the wreath. Surely, the electrical feature would mean something to a prospective purchaser who wanted that precise article, and in all likelihood it would be reflected in the price as compared with a wreath not so equipped.

In the course of the opinion, the court stated (p. 173):

> We do not regard as having any particular force the argument to the effect that, because the wreaths are used solely for decorative purposes, the electrical element embraced therein and used in illuminating them is not an essential element. The electrical feature obviously must have been inserted in the wreaths to serve a desired purpose at a particular time and the mere fact that it

is not used at all times would not, in our opinion, justify a holding that it is not essential. As a rule, electric lights do not burn during daylight hours except under unusual conditions, but the element which enables the light to be produced when desired is nonetheless essential. * * *

In the instant case the electrical element was intended to make the article more desirable, was used in illuminating it, and was essential for that purpose. It electrically illuminated the decoration and the area decorated. See also *New York Merchandise Co. et al.* v. *United States*, 59 Cust. Ct. 75, C.D. 3081, 271 F. Supp. 308 (1967), where the court held that Christmas tree lighting sets were "illuminating articles."

The court in the incorporated *Ross* case referred to *Solomon & Son* v. *United States*, 13 Ct. Cust. Appls. 353, T.D. 41256 (1925), which construed the predecessor to paragraph 218(c) of the Tariff Act of 1930 as including *ornamental* illumination, saying,

> * * * We do not believe that the character, degree, or extent of illumination furnished by an article is a proper test under the statute, if it is chiefly used in connection with artificial illumination and in such manner as to pass, reflect, refract, disperse, color, or otherwise affect the light for either practical or ornamental illuminating purposes.

The court then quoted from *Gallagher & Ascher Company* v. *United States*, 57 Cust. Ct. 348, C.D. 2813 (1966), wherein certain fleur-de-lis and reindeer lighting sets, in chief value of plastic, containing small electric bulbs, wiring, etc., used for decorative purposes around Christmas time were held dutiable under paragraph 353, as modified by T.D. 52739, as articles having as an essential feature an electrical element or device, stating at page 354:

> * * * The evidence in this record is sufficient to demonstrate that the results of the use of the imported fleur-de-lis and reindeer lighting sets are substantially the same as the uses made of articles enumerated in paragraph 353, that is, the establishment of a Christmassy decor to items in and around the house as well as to parts of the household itself. Whether the imported merchandise is employed on Christmas trees or in windows or on the copings of houses, it is performing the same decorative function of known articles in paragraph 353 and, what is more, this function is performed in substantially the same manner, namely, by electrically illuminating the decoration and the area decorated.

Based on the foregoing pertinent citations and reasoning, we find and hold that the electrically illuminated decorative bird cages herein are classifiable under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, dutiable at the rate of 13¾ per centum ad valorem, as claimed by the plaintiff. All other claims are dismissed.